MARGARET DELANEY v. THE CITY OF SALINA AND FRANK C. MILLER, *as Executor of the Estate of John Boyd, Deceased.*

1. WILL, *Contest of; Competent Juror.* In an action brought in the district court to contest a will, under ¿ 20 of the act of the legislature relating to wills, ( Comp. Laws of 1879, ch. 117,) where it is claimed that the testator's mind, by reason of his last sickness, became weak and unsound, and that while in that condition he was induced by fraud and undue influence to execute the will, *held,* that a person who was acquainted with the testator prior to his last sickness and prior to the time when it is claimed his mind became weak and unsound, but who did not see him during his last sickness, may be a competent juror in the case, although he may have had an opinion concerning the condition of the testator's mind at the time when he last saw him.

2. ———— Certain items of evidence considered, and *held,* that the court below did not err in excluding them.

3. ———— *Sanity of Testator.* The law does not require that a testator shall have absolute soundness of mind in all particulars, but only soundness of mind with regard to the particular matters under consideration; nor does the law require that he shall have the greatest or most perfect capacity of mind, but only such an amount and kind of capacity as will enable him to know what he is doing, the ties of relationship, his obligations to kindred and friends, and to whom he is giving his property.

4. ———— *Bequest to City.* A city may receive property, real and personal, by devise and bequest, for the purpose of prospecting for and developing a coal mine at or near the city.

5. ———— Many other questions considered, and *held,* that no material error was committed with reference thereto.

*Error from Saline District Court.*

ACTION brought by *Margaret Delaney* against *The City of Salina* and *Frank C. Miller,* as executor of the will of John Boyd, deceased, to contest the validity of said will. Trial at the November Term, 1883, and judgment for defendants. The plaintiff brings the case here. The opinion states the facts.

*John Foster,* and *J. G. Mohler,* for plaintiff in error.

*Garver & Bond,* for defendant in error Miller.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought under § 20 of the act of the legislature relating to wills. (Comp. Laws of 1879, ch. 117.) The action was brought for the purpose of contesting the will of John Boyd, deceased. Margaret Delaney, the plaintiff in error, was the plaintiff below, and the city of Salina and Frank C. Miller, executor of the last will and testament of John Boyd, deceased, the defendants in error, were the defendants below. That portion of the will which devises and bequeaths the estate of John Boyd, deceased, reads as follows:

"*1st Item:* I desire that all the just and necessary expenses of my sickness be paid out of my estate.

"*2d Item:* I give and bequeath to my sister, Margaret Delaney, now a resident of the city of Ottumwa, state of Iowa, the sum of one hundred dollars.

"*3d Item:* I desire that my one-story brick building situated on the south one-half of lot number ninety-nine, Santa Fé avenue, in the city of Salina, county of Saline, state of Kansas, be sold within two years after my death; and the proceeds of said sale, together with all other moneys or credits that I may be possessed of at the time of my death, I give, devise and bequeath to the city of Salina, for the exclusive purpose of prospecting for and developing a coal mine at or near the city of Salina, Saline county, Kansas, said mine to be known and designated as the John Boyd coal mine; and that the city of Salina shall be joint owner in such coal mine in proportion as this fund bears to the whole amount invested in such mine; that the interest of the city of Salina in such mine shall be forever free from any and all assessments of any nature whatsoever by any company or corporation interested in such mine.

"*4th Item:* I appoint Frank C. Miller my sole executor of this my last will and testament."

The case was tried before the court and a jury. Only special questions were presented to the jury, and not the entire case. Such special questions, with the answers of the jury, are as follows:

"Q. 1. Were the mind and memory of the testator, John Boyd, sufficiently sound to enable him to know and under-

stand the business in which he was engaged at the time when he executed his will? A. Yes.

"Q. 2. Were the mind and memory of the testator, John Boyd, sufficiently sound to enable him to know and understand, and have a recollection of the property he meant to dispose of, the ties of relationship, the persons who were the objects of his bounty, and the manner in which his property was to be distributed among them? A. Yes."

The court also made the following finding, to wit:

"The court found the issue in favor of defendants, and that no undue influence was used to induce the testator, John Boyd, to make the will in question, and that the same was not induced by the fraud of anyone, and was in all respects a true and valid last will and testament of the deceased, John Boyd."

The plaintiff moved for a new trial upon various grounds, but the court overruled the motion, and then rendered judgment upon the foregoing findings, in favor of the defendants and against the plaintiff, for costs; and of this judgment the plaintiff now complains.

Numerous questions are presented to this court, and all that for any reason might merit any consideration will be considered and answered as we proceed with this opinion.

The first question presented is sufficiently answered by the following cases: *A. T. & S. F. Rld. Co. v. Franklin*, 23 Kas. 74; *The State v. Miller*, 29 id. 43.

The second question is, whether the juror Joseph Allerton was competent to serve as a juror in this case. The only objection urged against his competency is, that he knew the testator, John Boyd, in his lifetime, and had an opinion as to the condition of Boyd's mind up to the time when he last saw him. Now there is no pretense that Boyd was of weak or unsound mind prior to his last sickness; and Allerton had no knowledge of Boyd during his last sickness, nor for some weeks or months prior thereto. Hence Allerton's opinion of the condition of Boyd's mind at the time when he, Allerton, last saw him did not render Allerton an incompetent juror. As tending to support this proposition, see the case of *The State v. Wells*, 28 Kas. 321. The opinion

1. Competent juror.

of Allerton was wholly immaterial in this case. Besides, in a case like this the parties are not entitled to a jury as a matter of right, and the court itself has the entire control of the case. (*Rich v. Bowker*, 25 Kas. 7. See also *Woodman v. Davis*, 32 id. 344.)

As a third question or point, the plaintiff claims that the court below erred in excluding evidence. This question should be divided into several questions, for the plaintiff complains of the exclusion of several separate and distinct items of evidence. Before stating these questions perhaps it would be well to state the issues presented by the pleadings. The plaintiff in this action is the sister and the sole heir of John Boyd, deceased, and the property would go to her except for the will; and the plaintiff alleges that at the time when Boyd executed the will he was of weak and unsound mind, and that he was induced to execute the will by fraud and undue influence; and whether he was of weak and unsound mind, and whether he was induced to execute the will by fraud and undue influence, are the only material issues in the case. The evidence excluded is as hereafter stated. The plaintiff, after proving the appearance and condition of the deceased a few days before his death, by the witness T. H. G. Hudson, then offered to prove by Hudson what he, Hudson, had told other persons with respect to such appearance and condition; but the court excluded this evidence. The plaintiff resides in Iowa, and has resided there for a great many years. The deceased resided in Kansas for about eight or nine years prior to his death, but before coming to Kansas he resided in Iowa, near where his sister resides; and the plaintiff, after introducing evidence tending to show the relationship and the state of feelings which existed between the plaintiff and the deceased during his lifetime, then offered to prove what the general reputation in Iowa concerning such feelings was, but the court excluded the evidence. The plaintiff also desired to show that she had no notice of the probating of the will, but the court excluded the evidence. The plaintiff also offered evidence tending to prove that the judge of the court and many others,

some of whom were witnesses in this case, had signed a sub-
scription-paper to the amount of $2,195 to organize a corpo-
ration to dig or bore for coal-oil and gas, at or near Salina, and
that the corporation was to be named "The Saline County
Coal-oil and Gas Company," and that afterward a corporation
was in fact formed, including some of the above signers, but
not the judge, and that the corporation was named "The John
Boyd Coal Mine," but the court excluded the evidence. The
plaintiff also desired to impeach the testimony of a certain
witness by proving statements made by him out of court, and
claimed to be different from his testimony in court, without
having at any time laid any foundation for the impeachment
of such testimony, and the court excluded the impeaching
evidence. There was also some other evidence excluded, but
it was all excluded for good and sufficient reasons. We think
no error was committed in excluding evidence.

2. No error in
excluding
evidence.

In considering these questions of the exclusion of
evidence, it must be remembered, however, *what
the issues were*, and that they were tried before the court and a
jury, without any application having ever been made for a
*pro tem.* judge, or for a change of venue.

We shall pass over the fourth question presented by the
plaintiff, for it needs no answer; and such is also true with
respect to the greater part of the fifth; and the rest of the
fifth is sufficiently answered by the decision in the case of
*Baughman v. Baughman*, 32 Kas. 538.

The sixth and seventh questions presented by the plaintiff
are entitled to more consideration. They have reference to
the instructions of the court to the jury, given and refused.
The instructions asked for by the plaintiff and refused by the
court would have been misleading under the facts of this case
if they had been given in the form in which they were asked.
Also, the exception taken to their refusal was a general excep-
tion as to all, and not a particular exception as to any one of
them. Besides, we think that all that was proper in the
instructions refused, or that should have been given to the
jury, was given by the court in its general charge. The gen-

eral charge included the following among other instructions, to wit:

" . . . You will notice the points of time to which your attention is directed, and you are called upon to answer as to unsoundness of mind at the time of the execution of the will, and by 'execution of the will' is meant the time of his (the testator's) forming his judgments and intents as to what to do with his property; the times of directing and having them put upon paper, and the final settling of or determining what they should be; the signing of his name thereto; and the delivery of the instrument as and for his will and testament. The language of the questions you will notice, also, is not as to perfect strength, vigor, or soundness of mind, but soundness and strength as to a certain degree or extent. . . . In determining of his actions and conduct during that period, (his last sickness,) it might be proper to say, you should compare these and him there, with himself and his conduct when well. He should here, at the time of making his will, though sick, have sufficient memory to recollect in his mind, without prompting, the elements of the business to be transacted, and to hold them a sufficient length of time to perceive their relations to each other, and to form a judgment thereon."

It does not appear that any of the instructions given by the court were excepted to. We cannot say that any error was committed by the court, either in giving or refusing instructions. We think the theory upon which the case was tried, as shown by the evidence introduced and excluded, the instructions given and refused, the questions submitted to the jury and refused, and the findings made by the court and jury, was the correct theory of the case; and we think such theory is sustained by the authorities. (*Horne v. Horne*, 9 Ired. [N. C.] 99; *Coleman v. Robertson*, 17 Ala. 84; *Thompson v. Kyner*, 65 Pa. St. 368; *Wood v. Wood*, 4 Brews. 75; *Trish v. Newell*, 62 Ill. 196; *Rutherford v. Morris*, 77 id. 397; *Turner v. Cheesman*, 15 N. J. Eq. 243; *In re Gleespin's Will*, 26 id. 523; *Converse v. Converse*, 31 Vt. 168; *Terry v. Buffington*, 11 Ga. 337; *Stancell v. Kenan*, 33 id. 56, 68; *Higgins v. Carleton*, 23 Mo. 118.) It will be perceived from the authorities — those above cited, and others — that the law does not require that a tes-

3. Absolute sound-
ness of mind of
testator, not
required.

tator shall have absolute soundness of mind in all particulars, but only soundness of mind with regard to the particular matters under consideration; nor does the law require that he shall have the greatest or most perfect capacity of mind, but only such an amount and kind of capacity as will enable him to know what he is doing, the ties of relationship, his obligations to kindred and friends, and to whom he is giving his property. This rule of capacity and soundness of mind is substantially the same as the rule in criminal cases. (*The State v. Nixon,* 32 Kas. 205.)

The eighth and ninth points presented by the plaintiff do not require any consideration further than to refer to the following cases, to wit: *Rich v. Bowker,* 25 Kas. 7; *Woodman v. Davis,* 32 id. 344.

The tenth point made by the plaintiff is that the will is void upon its face. It is claimed that it is not within the power of a city to accept or receive property as a devise, bequest, or legacy, or for any such purpose as that which is designated in the present will. We do not think that this point is sound or well taken. Mr. Dillon, in his work on Municipal Corporations, uses the following language:

"SEC. 436. Municipal and public corporations *may be the objects of public and private bounty.* This is reasonable and just. They are in law clothed with the power of individuality. They are placed by law under various obligations and duties. Legacies of personal property, devises of real property, and gifts of either species of property, directly to the corporation and for its own use and benefit, intended to and which have the effect to ease them of their obligations or lighten the burdens of their citizens, are valid in law, in the absence of disabling or restraining statutes. Thus, a conveyance of land to a town or other public corporation *for benevolent or public purposes,* as for a site for a school house, city or town house, and the like, is based upon a sufficient consideration, and such conveyances are liberally construed in support of the object contemplated.

"SEC. 437. Not only may municipal corporations take and hold property in their own right by direct gift, conveyance, or devise, but the cases firmly establish the principle, also,

that such corporations, at least in this country, are capable, unless specially restrained, of *taking property*, real and personal, *in trust* for purposes germain to the objects of the corporation, or which will promote, aid or assist in carrying out or perfecting those objects. So such corporations may become *cestuis que trust* within the scope of the purposes for which they are created. And where the trust reposed in the corporation is for the benefit of the corporation, or for a charity within the scope of its duties, it may be compelled, in equity, to administer and execute it. But the *legislature may divest* a municipal corporation of the *power to administer the charitable trusts* conferred upon it, and appoint or provide for the appointment of new trustees independent of the corporation, and vest in them the management of such trusts."

See also Dillon on Municipal Corporations, §§ 438 to 443. Also, in this state, cities of the second class, such as the city of Salina is, have the following among other powers, to wit:

"*Second.* To purchase and hold real and personal property for the use of the city. *Third.* To sell and convey any real or personal property owned by the city, and make such order respecting the same as may be conducive to the interests of the city. *Fourth.* To make all contracts and do all other acts in relation to the property and affairs of the city necessary to the exercise of its corporate or administrative powers." (Second-class City Act, § 4.)

Title by purchase includes every mode of acquiring an estate except that of inheritance. It includes the mode of acquiring an estate by means of a devise or will, as well as by other modes of purchase. (2 Bl. Com., ch. 15.) And upon general principles a city may use any lawful means of acquiring what it needs; and the city of Salina, as a city or as a corporation and in its corporate capacity, unquestionably needs coal, as well as the inhabitants, and it may use any lawful means to procure coal. It is also provided by § 1 of the act relating to wills, as follows:

"SECTION 1. Any person of full age and sound mind and memory, having an interest in real or personal property of any description whatever, may give and devise the same to any person by last will and testament lawfully executed, sub-

ject, nevertheless, to the rights of creditors, and to the provisions of this act."

It will be seen by the foregoing statute that real property may be devised "to any person;" and the thirteenth subdivision of § 1 of the act concerning the construction of statutes, Comp. Laws of 1879, ch. 104, provides that "the word 'person' may be extended to bodies politic and corporate." Now if the will is valid, and we think it is, and if the city of Salina may properly take the property under the will, and we think it may, there will certainly be no difficulty in disposing of the property in accordance with the terms of the will. If neither the executor nor the city of Salina has the power to execute some particular portion of the trust attempted to be reposed in either, the court could easily find and appoint some suitable person to execute such trust. And if the trust cannot be executed precisely as it was intended, the court may, under the doctrine of *cy pres*, approach it, or require that the nearest thing to it shall be performed. These remarks cover some parts of some of the other points made by the plaintiff.

*4. City may take property under will.*

There are some other matters presented under the tenth point, which we will now consider in connection with the eleventh, twelfth, thirteenth and fourteenth points. The motion for the new trial was filed on December 17, 1883, and the hearing thereof was continued to January 14, 1884, at which last-mentioned time the plaintiff asked for a continuance to a still later period of time; but the application for the continuance was overruled. In this we perceive no error. The plaintiff claims that the will was not properly attested and subscribed by the subscribing witnesses in the presence of the testator. This matter was not put in issue by the pleadings. On the contrary, the petition set forth the will in full, apparently regular and executed in due form, without any allegation that it was not properly attested, and alleged that it had been probated. Besides, the evidence introduced on the trial shows that it was properly

*5. Refusal of continuance, not error.*

attested, and was properly subscribed by the subscribing witnesses and the testator in the presence of each other.

The plaintiff also claims that the findings of the jury are against the weight of the evidence. We think there is ample evidence to sustain such findings, and also to sustain the finding of the court. The plaintiff also claims that the court erred in ruling out certain testimony offered on the motion for a new trial. Testimony was so ruled out, but we have failed to perceive any error in such ruling. Much of the testimony thus excluded was mere hearsay; some of it was merely cumulative; and some of it was by some of the jurors themselves, who stated in substance that they misunderstood the charge of the court. Of course, all this evidence was incompetent. Besides, the jurors should not have misunderstood the charge of the court, nor have been misled by it, for it was plain enough; and that portion of the charge which it is claimed misled the jurors is sound law, which we suppose has never been questioned. It was: That the question of soundness or unsoundness of mind in the present case, related to the time of the execution of the will.

As a part of the fifteenth point, the plaintiff claims that the court made its findings without being requested so to do. There is certainly no error in this. The other portions of the fifteenth point have already been considered.

As a sixteenth point, the plaintiff claims that the court erred in rendering any judgment against the plaintiff upon the findings without any general verdict. We perceive no error in this. (*Rich v. Bowker*, 25 Kas. 7.) The findings of the court and jury, taken together, embraced findings upon all the issues in the case.

The judgment of the court below will be affirmed.

All the Justices concurring.