B. F. HUDSON, as *Executor of the Last Will and Testament of Susan Grimes, deceased, et al.,* v. ANNA HUGHAN *et al.*

No. 7704.

1. TESTAMENTARY CAPACITY—*Finding of Incapacity, Sustained.* Absolute sanity is not always the test of testamentary capacity, and where it is shown that a will was executed by a testatrix whose mind was impaired by old age and enfeebled by apoplectic attacks, followed by partial paralysis, so that she was unable to understand to a reasonable degree the effect and operation of the will upon her property and those entitled to receive it, a finding of incapacity will be sustained.

2. PERSON OF SOUND MIND AND MEMORY—*Instruction.* In the trial of the case the court instructed the jury that "A person of sound mind and memory, within the meaning of the law, is one who has full knowledge of the act she is engaged in and of the property she possesses, an intelligent understanding of the disposition she desires to make of it and of the persons she desires shall receive her property, and the capacity to recollect and comprehend the nature of the claims of those who are excluded from participation in her bounty. It is not necessary that she should have sufficient capacity to make contracts, to do business generally, or to engage in complex and intricate business matters." *Held,* Not error.

3. CONTEST OF A WILL—*Questions for Jury.* In the contest of a will the parties are not entitled to a jury as a matter of right; but, where a jury is called, it is not necessary that the special issues submitted to them should be divided into numerous particular questions of fact. It is sufficient to submit questions as

to whether the testatrix, at the time the will was made, was of sound mind and memory, and whether it was made and signed by reason of undue influence on the part of certain persons.

4. EVIDENCE *Sustains Judgment.* The evidence examined, and *held* to be sufficient to sustain the findings and judgment.

*Error from Atchison District Court.*

ACTION brought by Anna Hughan, Katie Grimes, and Nellie Grimes, on May 3, 1890, against B. F. Hudson, as executor of the last will and testament of Susan Grimes, deceased, Mary Ellen Bryning, Eliza Jane Graham, Howard Grimes, Robert Bruce Grimes, Malcolm Grimes, and Alice Grimes Smith, to set aside the last will and testament of said Susan Grimes, deceased. Susan Grimes died February 6, 1890, and the will, which was executed by her on September 16, 1887, is as follows :

*"State of Kansas, Atchison county, ss.:*

"I, Susan Grimes, of the city of Atchison, county of Atchison, and state of Kansas, of full age, and, through the blessing of God, of sound mind and memory and good bodily health, being mindful of the uncertainty of life and the certainty of death, do make and publish this my last will and testament, hereby revoking all other wills or codicils whatsoever heretofore made by me.

"With respect to my worldly estate, both real and personal, after the payment of my just debts, I give, devise, bequeath and dispose of it in the manner and proportions following, to wit :

*"First.* I give and devise unto my daughters, Eliza Jane Graham, and Alice Grimes Smith, in fee simple absolute, my homestead, where I now reside, comprising all of lots numbered one (1), two (2), three (3), and four (4), in block numbered eight (8), in that part of the city of Atchison, county of Atchison, and state of Kansas, commonly known and described as 'South Atchison,' together with the improvements thereon and appurtenances thereunto belonging. I

also give and bequeath to them, my said daughters, Eliza and Alice, all of my household goods and furniture, of which I may die possessed, for their sole use and benefit as long as they or either of them shall occupy said homestead.

"*Second.* I direct that the residue and remainder of my estate, both real and personal, wherever situated, shall be sold, either at private or public sale, to the best advantage by my executor, who, out of the proceeds of such sale, shall first pay to each of my daughters, Eliza Jane Graham and Alice Grimes Smith, the sum of four thousand dollars ($4,000) in addition to the property hereinbefore devised to them; and to each of my sons, Howard Grimes, Robert Bruce Grimes, and Malcolm Grimes, the sum of four thousand dollars ($4,000) in lawful money of the United States, which several sums of money I give and bequeath to them, respectively, forever.

"*Third.* I give and bequeath to Katie Grimes and Nellie Grimes, daughters of my son John T. Grimes, now deceased, each the sum of two hundred and fifty dollars ($250) in lawful money of the United States, which shall be in full of their share in my estate.

*Fourth.* The balance of the proceeds of such sale as shall be left after paying the legacies and bequests above provided for, and all other of my property whatsoever, I give, devise and bequeath forever to my six (6) children now living, whose names are as follows: Mary Ellen Bryning, Eliza Jane Graham, and Alice Grimes Smith, daughters, and Howard Grimes, Robert Bruce Grimes, and Malcolm Grimes, sons, to be divided equally among them, share and share alike.

"*Fifth.* I further direct that the amount mentioned, together with the interest provided for, in any promissory note I may hold at my death against any of my children, and which shall then be owing to me or my estate, shall be deducted from his or her share, respectively, and the note canceled.

"*Sixth.* I hereby appoint B. F. Hudson, of the city of Atchison, county of Atchison, and state aforesaid, the sole executor of this my last will and testament.

"In witness whereof, I, Susan Grimes, have to this, my last will and testament, subscribed my name, this 16th day of September, A. D. 1887.

SUSAN GRIMES."

"Subscribed by the testator in the presence of each of us, and at the same time declared by her to us to be her last will and testament.

HELEN L. HUDSON, of Atchison city, Kan.
JOHN N. SHOEMAKER, of Atchison city, Kan.
BELLE SHOEMAKER, of Atchison city, Kan."

The codefendants of the executor were the only living children of Susan Grimes, at the time of her death. John T. Grimes was a son of the testatrix, who died October 30, 1870, and left surviving him his wife, Anna, who subsequently intermarried with one Hughan, and two children, Katie and Nellie Grimes. The plaintiffs below alleged that Eliza Jane Graham and Alice Grimes Smith had lived with their mother for many years, and until the time of her death, when she was of the age of 79 years; that since about October, 1883, Susan Grimes had been debilitated and infirm in body and mind, had had frequent attacks of apoplexy, and had suffered paralysis, which injured her mind, and by reason of such injury and impairment she was unable to make a valid disposition of her property on and long prior to September 16, 1887; that she was under the control and influence of the two daughters who lived with her, to such extent that she neither had nor exercised any will, judgment or control of her own affairs, and was incapable of exercising any will or judgment when she signed the will in controversy; that the will was procured to be made and signed in order to defeat the plaintiffs out of their proper share of the estate of Susan Grimes, which was then of the full value of $70,000.

The averments of incapacity and undue influence

were denied.   At the trial a jury was called, and two special questions were submitted to them, as follows :

"1.  Was the deceased, Susan Grimes, on the 16th day of September, 1887, at the time the instrument propounded as the last will and testament purports to have been made, of sound mind and memory?

"2.  Was the said instrument made and signed by reason of the undue influence on the part of the defendants Eliza Jane Graham and Alice Grimes Smith, or either of them?"

The answer to the first question was "No," and to the second "Yes."   Motions were made to set aside the answers to the special questions and for a new trial, which were overruled, and the court thereupon rendered judgment setting aside the will.   The defendants below, except Mary Ellen Bryning, allege error.

*B. F. Hudson*, for plaintiffs in error.

*W. W. & W. F. Guthrie*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. :   When the will of Susan Grimes was executed, in 1887, six of her children were living. She had survived two sons, E. B. Grimes, who died intestate and childless in 1883, and from whom she inherited considerable property, and John T. Grimes, who died in 1870, leaving his wife, Anna, and two children, Katie and Nellie Grimes, who brought this proceeding to contest the will.   The husband of the testatrix, Dr. W. H. Grimes, died in 1877, and most of the time since then the two daughters, Eliza Jane and Alice, have lived with her.   She was about 76 years of age at the time the will was made, and about 79 years of age at the time of her death in 1890, and for several years before she had been very feeble.   Al-

though not subject to insane delusions, her mind had been impaired by disease and advancing years, but whether it was so far impaired as to render her incapable to make a will is a difficult question. The evidence respecting her testamentary capacity was conflicting and unsatisfactory, and while, if the testimony had been submitted to this court in the first instance, a different conclusion might have been reached, we regard it to be sufficient under the rules which obtain here to sustain the finding of the jury and the trial court. She had suffered a number of apoplectic attacks, one of which was as early as 1859, and her daughter, in speaking of that attack, said that her tongue was slightly paralyzed. There is testimony that this was followed by other attacks more severe and serious, which resulted in drawing her face out of shape, affecting her speech, and producing a sort of stupor. Neighbors whom she had known well testified that she failed to recognize them, did not comprehend what they said, and that her answers to questions were irrational and unsatisfactory. They stated that for seven or eight years before her death she appeared to be failing and to grow weak in body and mind. Her daughter testified that for four or five years before her death there seemed to be nothing that would engage her attention; that she would sit for hours at a time with her head in her hands and finger at her mouth, paying no attention to what was going on in the house. She also stated that, when persons spoke to her mother, her daughters, Mrs. Graham or Mrs. Smith, would answer for her, and that for five or six years her mind had been so feeble that she was subject to the will of others. Another testified that, in 1883, when her son, E. B. Grimes, was seriously sick, she took no interest in the

discussions respecting his illness, and when the report was made by the doctor that he could not live long, she showed no interest or emotion. Still others testified that she did not understand anything about her business, and that, when matters of great business concern were suggested to her, she exhibited no interest in or comprehension of them. Physicians testified that apoplectic attacks of the kind said to have been suffered by the testatrix ordinarily produce paralysis, and when the mouth is drawn and the tongue and speech affected it is evidence that certain parts of the brain are affected. Where such symptoms exist, it indicates that the memory and intelligence of the person are to some extent affected and impaired. The tendency of repeated attacks of the kind mentioned, and especially with persons advanced in age, it is stated, would be to weaken the mental faculties and gradually to grow worse. One of the physicians who saw her while she was alive, but after the will was made, stated that she was physically and mentally weak, and had "senile dementia." He stated that the condition was a symptom of softening of the brain, which is a result or associate of paralysis.

The testimony to show the exercise of undue influence is weak, although some of it tends to show that the daughters who resided with the testatrix, and who received the larger share by the terms of the will, may have controlled her will and influenced her to exclude some of her relatives from an equal share of her bounty. If the evidence sustains the ground of incapacity, however, the will must be held invalid, and the judgment must stand.

The main controversy in the case was with respect to the testamentary capacity of the testatrix. On one

part, it is contended that the mere weakness of the mind does not take away capacity to make a will, but that actual insanity must be shown in order to invalidate the will. On the other part, it is contended that it is not necessary to show that the testatrix is absolutely insane, but that if the mind has been enfeebled by paralysis and old age so that she is unable to understand the effect and operation of her will upon her property and those entitled to receive it, the will should be rejected. The view taken by the trial court is shown by the instructions given to the jury, and the rulings upon the evidence show that the same theory was maintained throughout the trial.

"4. It is not claimed, upon the part of the plaintiffs contesting the validity of the will in question, that Susan Grimes, the testatrix, at the time the same was executed, was insane, but, by reason of her advanced years, and from frequent apoplectic attacks, had suffered paralysis which had greatly impaired and injured her mind, as well as debilitated her body, and that thereupon her mind became so impaired that the same had become unsound and impaired beyond the power to make valid disposition of her property and estate by will and testament, long prior to September 16, 1887."

"6. A person of sound mind and memory, within the meaning of the law, is one who has full knowledge of the act she is engaged in and of the property she possesses, an intelligent understanding of the disposition she desires to make of it, and of the persons she desires shall receive her property, and the capacity to recollect and apprehend the nature of the claims of those who are excluded from participating in her bounty. It is not necessary that she should have sufficient capacity to make contracts, to do business generally, or to engage in complex and intricate business matters; and if the jury believe, from the testimony in this case, that, at the time of making the will in controversy, the deceased, Susan Grimes, had

such a knowledge as above defined, and possessed such understanding of the disposition she desired to make of her property, and of the persons she desired to receive the same, and had capacity to recollect and apprehend the nature of the claims of those who were excluded from participating in her bounty, then she would be of sound mind and memory within the meaning of the law, even though the jury may believe from the testimony that she was physically weak, and did not have the mental capacity sufficient to make contracts, to do business generally, or to engage in complex and intricate business matters.    But if, on the other hand, you find by a preponderance of the evidence that, at the time of making the will in controversy, the deceased, Susan Grimes, had not such knowledge as above defined in this instruction, and did not possess such understanding as to the disposition she desired to make of her property, and of the persons she desired to receive the same, and did not have capacity to recollect and apprehend the nature of the claims of those who were excluded from participating in her bounty, then she would not be of sound mind and memory, within the meaning of the law.''

'' 10. The jury are instructed that, in determining the issues in fact submitted to you under the instructions herein, you should carefully look to all the evidence in this case, and in so doing you should take into consideration the physical condition of Susan Grimes arising from her age, sickness, or any other cause ; the condition of her mind at and before the time of the execution of the will in controversy ; the execution of the will and its contents ; the execution of any former wills by her and the provisions thereof ; the relations existing between her and the parties respectively herein, at and before the execution of the will in controversy ; her family and connections ; the terms upon which she stood with them ; the claims of particular individuals ; the condition and relative situation of the legatees or devisees named in the will ; the situation of the testatrix herself, and the circumstances under which the will was made ; and, in brief, every

fact or circumstance which tends to throw any light upon the question submitted to you.''

We think the theory of the court as to the degree of intelligence or amount of mental capacity requisite to make a will is correct. (*Delaney v. City of Salina*, 34 Kan. 532; *Converse v. Converse*, 21 Vt. 168; *Thompson v. Kyner*, 65 Pa. St. 368; 25 Am. & Eng. Encyc. of Law, 992.) This was not a case of absolute insanity as generally understood. There were no delusions or derangements of the mind—no perversion of the mental machinery; but rather a wearing out and a failure of the mental faculties to work with sufficient force. It was a case, as described by one of the witnesses, of ''senile dementia,'' or a weakness of the understanding and reason, resulting, as the testimony tends to show, from old age, and also repeated apoplectic attacks followed by paralysis. As absolute soundness of mind is not always the test of testamentary capacity, the omission to instruct the jury as requested upon sanity and insanity was not prejudicial to the plaintiffs in error. What constituted a sound mind and memory, within the meaning of the statute, was fairly submitted to the jury, and the additional definitions requested would, we think, have tended to confuse rather than to aid them in the determination of the issues presented to them.

We think there is no good reason to complain of the form in which the issues were submitted to the jury. (*Mooney v. Olsen*, 22 Kan. 78; *Delaney v. City of Salina*, supra.) They are not to be likened to particular questions of fact, and the findings when made are not conclusive upon the court. In cases of this character, the parties are not, as a matter of right, entitled to a jury, but the issues may be submitted to one for the information of the court, and to relieve it from the

burden of determining controverted questions of fact. The court may accept findings in whole or in part, or, if not satisfied with them, may ignore them and proceed to make findings of its own upon the evidence submitted. In the present case the findings of the court upon the questions involved are the same as those returned by the jury.

A number of objections were raised to the testimony, as well as to the rulings upon the instructions, but the view that has been taken disposes of those that are deemed to be material, and a reference to them in detail appears to be unnecessary.

There is a claim of misconduct on the part of the court and jury, but, from a careful reading of the testimony, we are unable to say that it constitutes a ground for the reversal of the judgment.

The judgment will be affirmed.

MARTIN, C. J., having been of counsel, did not sit in the case.

ALLEN, J., concurring.