No. 22,494.

ELIZA C. TREADWELL, *Appellant*, V. ROBERT H. BEEBE, personally and as Executor, etc., and THE CITY OF ANTHONY, *Appellees.*

SYLLABUS BY THE COURT.

1. TRUST FUNDS—*Power of City to Accept a Bequest of Trust Funds for Public, Charitable Use.* A Kansas municipality has power to accept a bequest of a trust fund and to administer it in perpetuity if the purpose of the trust created by such bequest is for a public, charitable use.

2. SAME—*When Trust Fund is for Public, Charitable Use.* A trust fund is for a public, charitable use where its purpose is to buy food and fuel for needy and deserving inhabitants of the municipality to which the trust fund is bequeathed and by which it is to be administered.

3. SAME. A trust fund is for a public, charitable use where its purpose is to aid any deserving person suffering from cancer to secure treatment for that disease in its early and probably curable stages.

4. SAME—*Provision of Will—Not Ambiguous.* The provisions of a will making disposition of the residue of an estate after all the other provisions of the will are executed and fully discharged, examined, and no ambiguity discerned therein.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed June 5, 1920. Affirmed.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, W. E. Stanley, A. C. Todd,* all of Wichita, *Edward F. Clark,* and *Warren R. Voorhis,* both of New York, N. Y., for the appellant; *Roger Hines,* of New York, N. Y., of counsel.

*Donald Muir, H. O. Davis, Vernon Day,* and *R. H. Beebe,* all of Anthony, for the appellees; *Henry J. Brady,* of Anthony, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This suit by an heir at law challenges the validity of certain features of a will, and seeks a judicial construction of the will touching the disposition of the residuary estate.

The testator, W. E. Treadwell, in his lifetime was a citizen of Anthony, in Harper county. He died in 1918 seized of con-

siderable real estate and of about $75,000 worth of personal property. By his will and codicil, he made certain bequests of money and property to various persons, provided for certain annuities to certain beneficiaries, including an annuity of $1,-200 to his mother, the plaintiff, during her natural life. He also bequeathed $4,000 to the city of Anthony to purchase equipment for its fire department. The testator named the defendant, Robert H. Beebe, as executor, and to act as trustee to carry out the provisions of the will. In the original will, the testator provided:

"Sixteenth: After the death of . . . and of said Eliza C. Treadwell, [the plaintiff mother] . . . the rest and residue of my estate shall be by my executor or trustee paid and delivered to my heirs at law in accordance with the laws of descents and distributions of the State of Kansas, unless I shall hereafter by codicil hereto attached otherwise direct, in which event the rest and residue of my estate shall be disposed of in accordance with such codicil."

The codicil provided:

"That my estate shall in all ways be administered and distributed as in my said will provided, excepting only that the rest, residue and remainder thereof, instead of descending in accordance with the laws of descent and distribution, as follows:

"After payment of annuities, legacies and gifts as in said will provided, all notes, accounts, bonds, choses in action then in the hands of my trustees or either of them and belonging to my estate, shall be converted into cash; and my trustee, Robert H. Beebe or his successor, shall then pay to the City of Anthony, Kansas, the sum of four thousand ($4,000.00) dollars, to be used by said city in purchasing equipment for its fire department, and for such purpose and to be paid as aforesaid, I do give and bequeath to said City of Anthony, Kansas, said sum of four thousand dollars, to be used by said city in purchasing equipment for its fire department.

"My trustees, the said Beebe or his successor, shall then pay to the City of Anthony, Kansas, in trust, all funds then remaining in my estate as part thereof, to be held and used by said city as hereinafter provided, and for the uses and purposes hereinafter set out, and to be paid as above provided, I give and bequeath to said City of Anthony, Kansas, in trust all funds remaining in and a part of my estate after compliance with all the provisions of my will not affected by this codicil, and after payment of said sum of $4,000.

"The amount so paid by my trustee to said City of Anthony, Kansas, shall be profitably and safely invested and the net proceeds of the investment thereof shall be used by said city for the purpose of buying food and fuel for needy and deserving persons who have been actual residents of said city for at least six months. I request that the president

Treadwell v. Beebe.

of the First National Bank of Anthony, Kansas, the president of the Citizens National Bank of Anthony, Kansas, and the president of the Farmers State Bank of Anthony, Kansas, act as an investment committee to invest the sum so paid in trust to said city, to collect all moneys due from said investment and to pay the net proceeds thereof into the treasury of the City of Anthony, to be kept as a relief fund by the treasurer of said City of Anthony, as custodian thereof. Vacancies in said investment committee may be filled by the commissioners of said city. The commissioners of said city shall pay claims for food and fuel furnished by drawing their order on the fund resulting from such investment; all claims for food and fuel furnished shall be itemized and verified, but no publicity shall be given to the names of the persons aided from such fund. In the case of any deserving person suffering from cancer in its early and probably curable stages, the commissioners of said city may allow as much as fifty dollars from such fund to aid such person in securing treatment for such cancer.

"After all the provisions of my will and of this codicil have been carried out, should any real estate remain a part of my estate, my trustee, the said Beebe or his successor, shall convey the same to my legal heirs, and they shall then acquire title to such real estate in the same proportions as they would have done had I died intestate on the date of such conveyance by my trustee."

The mother and sole heir of the testator in this action challenges the validity of the trust created by the will and conferred upon the city of Anthony, on two main grounds, viz.: (1) that the city has no corporate power to accept and administer the trust, and (2) that the trust does not create a public charity, and consequently is void under the rule against perpetuities. The third contention of the plaintiff is that she is entitled to a judicial construction of the will, and a ruling that she is now seized of a vested remainder in whatever residue of the estate may exist when the valid provisions of the will have all been performed and discharged.

The trial court ruled against plaintiff on all her contentions, and she appeals.

In presenting these interesting questions we have been favored with voluminous briefs, which we have carefully studied; but we do not find that the propositions involved are very difficult, nor is there any dearth of authority to aid in their solution. If the trust creates a public charity, and until appellant's first proposition is determined we will assume that it does, then it seems that under the spirit of Kansas law,

and perhaps under the letter of it, the city of Anthony may accept and administer the trust created by this will.

The statutes confer on a city of the second class the power to make all necessary ordinances, not inconsistent with the laws of the state, "as may be expedient for maintaining the peace, good government, and *welfare of the city* and its trade," etc. (Gen. Stat. 1915, § 1748) ; the city is authorized to purchase and hold real and personal property for the use of the city, and the word "purchase" has been held to mean the acquisition of title to property by any mode except by inheritance. (*Delaney v. City of Salina,* 34 Kan. 532, 539, 9 Pac. 271.) It has been held that a city may accept and administer a fund in perpetuity for the purpose of maintaining a public park (*Schnack v. City of Larned,* 106 Kan. 177, 186 Pac. 1012) ; and for the purpose of prospecting for and developing a coal mine (*Delaney v. City of Salina,* supra). In the Salina case, the present contention was made and answered:

"It is claimed that it is not within the power of a city to accept or receive property as a devise, bequest, or legacy, or for any such purpose as that which is designated in the present will. We do not think that this point is sound or well taken. Mr. Dillon, in his work on Municipal Corporations, uses the following language:

" 'Sec. 436 [5th ed. § 981]. Municipal and public corporations *may be the objects of public and private bounty.* This is reasonable and just. They are in law clothed with the power of individuality. They are placed by law under various obligations and duties. Legacies of personal property, devises of real property, and gifts of either species of property, directly to the corporation and for its own use and benefit, intended to and which have the effect to ease them of their obligations or lighten the burdens of their citizens, are valid in law, in the absence of disabling or restraining statutes. Thus, a conveyance of land to a town or other public corporation for *benevolent or public purposes,* as for a site for a school house, city or town house, and the like, is based upon a sufficient consideration, and such conveyances are liberally construed in support of the object contemplated.'

" 'Sec. 437 [5th ed. § 982]. Not only may municipal corporations take and hold property in their own right by direct gift, conveyance, or devise, but the cases firmly establish the principle, also, that such corporations, at least in this country, are capable, unless specially restrained, of *taking property,* real and personal, *in trust* for purposes germain to the objects of the corporation, or which will promote, aid or assist in carrying out or perfecting those objects. So such corporation may become *cestuis que trust* within the scope of the purposes for which they are created. And where the trust reposed in the corporation is for the benefit of the corporation, or for a charity within the scope of

its duties, it may be compelled, in equity, to administer and execute it. But the legislature may divest a municipal corporation of the power to administer the charitable trusts conferred upon it, and appoint or provide for the appointment of new trustees independent of the corporation, and vest in them the management of such trusts.'

"See, also, Dillon on Municipal Corporations, Secs. 438 to 443 [5th ed. §§ 983-988]."   (p. 538.)

"From the time the first modest volume was given to the public until the present, Dillon on Municipal Corporations has been regarded as high authority by both the bar and the bench."   (*Everly v. City of Gas,* 95 Kan. 305, 308, 147 Pac. 1134.)

In 19 R. C. L. 770, *et seq.,* it is said:

"So also a municipal corporation has an implied power to receive a gift of real estate for any corporate purpose.   While a municipal corporation would of course have no power to purchase with the public funds land or other property except for such public purposes as it was authorized to expend money for by its charter, it is well settled that it may hold real estate which is not devoted or intended to be devoted to any public purpose when such property has come to it in a lawful manner, as by gift or devise."   (770.)

"It is held in some jurisdictions that a municipal corporation has no power to administer a trust in favor of persons in reduced circumstances who are not paupers or persons for whose support the municipality is under a statutory liability.   In other jurisdictions it is held that such a trust is valid, as the effect of the gift is to prevent persons from becoming a public charge.   .   .   .   If a trust is beyond the power of a municipal corporation to execute it is not on that account void and a court of equity will appoint a new trustee to execute the trust." (778, 779.)

In 5 R. C. L. 320, it is said:

"A municipal corporation may act as trustee of a charitable trust where the trust created is germane to the purpose for which the corporation was called into being, and when the administration of the trust, and the liabilities it imposes, are not foreign to the objects for which the corporation was instituted.   In conformity with this rule it has been frequently declared that a municipal corporation may act as a trustee of a charitable trust for the support or establishment of free or public schools within the municipality.   Some courts take the view, however, that a municipal corporation cannot take as trustee of a charitable trust unless the power to do so is expressly granted or is necessary to the performance of its duties as a territorial and municipal corporation, while other courts maintain the rule that a municipality may act as trustee of a charitable trust when it is not prohibited from so doing by statute.   And this is true although the purposes of the trust are not strictly within the scope of the direct purposes of the corporation, but merely collateral thereto."

In 28 Cyc. 261, in discussing the inherent powers of municipalities, it is said:

"Every municipality asks for such powers as its location or conditions suggest, or its population or promoters may desire, and gets all which legislative complaisance may yield, with the result that an array of municipal charters of the United States present to legal view at once an amusing exhibition and a perplexing problem. The legislative attempt often seems to be to enumerate all the powers intended to be granted; and then, recognizing the futility of such effort, the legislature supplies omissions with a clause known as the general welfare clause, granting to the corporation power to do all such acts and pass such ordinances as may conduce to the public welfare. This residuary grant of municipal power, in whatsoever phrase it may be couched, although obviously intended to add to the enumerated powers of the municipality, has been thought in some cases to be nugatory under the constructive limitations of the preceding specific enumeration. The better view seems to be that the 'general welfare clause' alone amounts to a grant of all usual and necessary municipal powers, and the enumeration of particular powers grants all others therein specified."

"It has also been held that a city may, without special authority from the legislature, take a devise of land beyond its limits for a public park, and that it may do so in trust for a charitable use, although it may not, in the absence of such special authority, be able to exercise any police power over it." (Id. 606.)

"A municipal corporation has the capacity and power to take and hold real or personal property, by devise, bequest, or deed of gift, in trust for purposes of a public nature, including charitable uses, germane to the objects of the corporation, even according to the weight of authority, although the object may be one which the municipality could not carry out at the public expense." (Id. 616.)

In *Maxcy v. Oshkosh*, 144 Wis. 238 (31 L. R. A., n. s., 787, 793), it was said:

"That a city may become the trustee of a charitable trust, where the donation is made to aid some public purpose charitable in its nature, which it is the legal duty of the city to support and provide for, does not admit of doubt. When the trust is accepted, the city assumes the same obligations and becomes amenable to the same regulations that apply to other trustees of such trusts, and among them is the obligation to perpetually administer the charitable fund in accordance with the expressed wish of the testator. *Thorndike v. Milwaukee A. Co.*, 143 Wis. 1, 126 N. W. 881; *Beurhaus v Cole*, 94 Wis. 617, 69 N. W. 986; *Philadelphia v. Girard's Heirs*, 45 Pa. St., 1, 25; *Vidal v. Girard's Ex'rs*, 2 How. 127, 180, 190; *McDonogh's Ex'rs v. Murdoch*, 15 How. 367; *Webb v. Neal*, 5 Allen, 575; *McIntire Poor School v. Zanesville C. & Mfg. Co.*, 9 Ohio, 203; *First Parish v. Cole*, 3 Pick. 232; *Comm'rs v. McPherson*, 1 Speers (S. C.) 218; *Governor v. Gridley*, Walk. (Miss.) 328; *Carmichael v Trustees*, 3 How. (Miss.) 84; *Phillips v. Harrow*, 93 Iowa, 92, 61 N. W. 434; *Quincy v. Atty. Gen*, 160 Mass. 431, 35 N. E. 1066; *Chambers v. St. Louis*, 29 Mo. 543; *Delaney v. Salina*, 34 Kan. 532; *Maynard v. Woodard*, 36 Mich. 423;

2 Dillon Mun. Corp. (4th ed.) § 567; *Higginson v. Turner*, 171 Mass. 586, 51 N. E. 172." (p. 250.)

It is needless to pursue this inquiry further. The court holds that a Kansas municipality has power to accept a bequest of a fund and to administer it in perpetuity if the purpose of the trust thus created is for a public, charitable use.

The purposes of the trust which the testator sought to establish are:

"The buying of food and fuel for needy and deserving persons who have been actual residents of said city for at least six months." (Analogous to legal settlement, Gen. Stat. 1915, § 6821.)

"In the case of any deserving person suffering from cancer in its early and probably curable stages, the commissioners of said city may allow as much as fifty dollars from such fund to aid such person in securing treatment for such cancer."

Are these public uses, public charities? It would seem so. The constitution declares that such benevolent institutions as the public good may require shall be fostered by the state (Art. 7, § 1), and it is the duty of the several counties to provide for those inhabitants, who, by reason of infirmity or misfortune, may have claims upon the sympathy and aid of society. (Art. 7, § 4.) Pursuant thereto and in harmony therewith, elaborate and humanitarian statutes have been enacted authorizing and requiring counties, cities and townships to relieve the poor and afflicted. While the county is mainly the basic unit for the cost of local, charitable relief, yet the mayors and councils of the several cities are the overseers of the poor within their municipalities (Gen. Stat. 1915, § 6817); there may be city as well as county almshouses (Gen. Stat. 1915, § 6885); and the relief of the poor of a city is certainly a proper concern under its corporate duty to provide for the general welfare of the municipality. Food, fuel, clothing and shelter are the primary essentials of existence within the Kansas parallels of latitude, and if a city cannot concern itself with the relief of the poor, or with the administration of relief provided by a charitably disposed philanthropist to the deserving poor, in the matter of distributing food and fuel, then all the long journey which organized society has traveled from the days of the cave man comes to naught, and our boasted humanitarianism is but a pretense and a humbug. Public purpose! There are no public purposes impressed on a civilized community so important as to see to it that de-

serving persons in its midst. do not suffer from hunger and cold. Appellant cites the old case of *The State, ex rel., v. Osawkee Township,* 14 Kan. 418, as authority against the validity of this trust. We shall not now undertake a reëxamination of the principal questions involved in that case. The legislature has deliberately disregarded that decision in two notable instances, for the relief of drought-stricken farmers in central and western Kansas. (Laws of 1891, chs. 42, 129 and 199; Laws of 1895, ch. 242)·; and this court has recently qualified the reasoning upon which the decision in the Osawkee case rested (*Beck v. Shawnee County,* 105 Kan. 325, 182 Pac. 397). We note, however, that even the rigid reasoning of the Osawkee case would tend to sustain rather than to defeat the trusts created by this will. The learned jurist who wrote the opinion in the Osawkee case, speaking of its main purpose, said:

"It was generally understood that many farmers would come to this spring's sowing with little or no seed, and with stock weakened for lack of grain. To make good this lack is the evident purpose of the act— to provide grain for seed and feed. Its aim is not·to furnish food to the hungry, clothing to the naked, or fuel to those suffering from cold. It is not the helpless and dependent whose wants are alone sought to be relieved. If it were, the fact that many who are neither helpless nor dependent might obtain assistance through its administration, would be no valid objection to the constitutionality of the law. It contemplates a class who have fields to till and stock to care for, and proposes to help them with seed for their fields and grain for their stock, that thus they may pursue with better prospects of success their ordinary avocations. It taxes the whole community to assist one class, and that, not for the purpose of relieving actual want, but to assist them in their regular occupations." (p. 423.)

What the Osawkee bond issue did *not* contemplate—food for the hungry, fuel for those suffering from cold—is precisely what this trust to the city of Anthony *does* contemplate.

The DeBoissiere case (66 Kan. 1, 71 Pac. 286), which had to deal with a private trust—to provide a home in perpetuity for the orphans of Odd Fellows—has no application here. The present benefaction is to provide necessities for everybody within the city of Anthony who may need and deserve relief from cold and hunger. This is clearly a public purpose. But there is a limitation—only "deserving" inhabitants may be so relieved. Well, there is no urgent corporate duty, perhaps

none at all, to relieve the needs of the town loafer, the spend-thrift, the worthlessly improvident; and Christian society, without any qualms of conscience, may leave them to the consequences of their own folly. This limitation upon the testator's beneficence does not create a legal infirmity in the erection of the trust.

Neither does the provision concerning the suggested committee of local bankers to invest the fund for the city affect the validity of the trust. A trust of this sort, designed to endure as long as the town exists, is worthy of the public-spirited assistance of the best financial brains in the city, and quite appropriately the testator suggested—and he only requested—that the heads of the three leading financial institutions of the city be called into voluntary service in the matter of safety and permanency of the investment of the trust.

The provision for the assistance of persons afflicted with cancer is also a public philanthropy, and one which the testator, himself a long sufferer and victim of that disease, had a right to make, and which the city has power to accept and administer. This court would greatly regret it if law or precedent compelled us to hold the contrary. Here there is no limitation. Any person, anywhere, suffering from cancer, in its earlier and probably curable stages, may be assisted in securing treatment. The provision obviously creates a public charity, and one which the city may accept for administration.

The plaintiff's last contention is that, notwithstanding the trust provisions of the will, she is entitled to a judgment construing the will and to a judicial ruling that by its terms she takes presently, as vested remainderman, whatever property of the testator is left after the bequests, annuities, and public trusts created by the will are satisfied. The court holds otherwise. The will and codicil are to be read and construed together. The will says that *after* the death of the plaintiff, not before, the rest and residue is to be paid and delivered to his then existing statutory heirs. The will leaves no property undisposed of. The residue of the estate is bequeathed to certain persons readily ascertainable, to be received by them at a time—*after* his mother's death, and by a definite mode—the Kansas law of descents. (*Lasnier v. Martin,* 102 Kan. 551, 555, 171 Pac. 645.) Furthermore, this bequest is conditional.

If a codicil should be made, this provision of the will was not to become altogether effective; and a codicil was made—

"After all the provisions of my will and of this codicil have been carried out, should any real estate remain a part of my estate, my trustee the said Beebe or his successor, shall convey the same to my legal heirs, and they shall then acquire title to such real estate in the same proportions as they would have done had I died intestate on the date of such conveyance."

By the will the legal title to the property is conferred upon the executor and trustee. It remains in him until everything provided and contemplated by the will is accomplished. The mother takes nothing but what the will bestows on her—an annuity of $1,200 per annum. After all else has transpired, including her death, the executor is to convey the residue of the property to his then ascertainable heirs. (*Bullock v. Wiltberger*, 92 Kan. 900, 142 Pac. 950; *Markham v. Waterman*, 105 Kan. 93, 182 Pac. 546, and citations on page 96.) Doubtless there may be persons *in esse* who have now a vested interest, with enjoyment postponed, in the residue of this estate, but not the testator's mother, for the will clearly cuts her off with an annuity. They are those who are to enjoy the residue when the fullness of time and the final accomplishment of the executor's duties will mature their rights to conveyances and possession. The trial court correctly held that the will and codicil contained no ambiguity of any consequence to the plaintiff.

Affirmed.