**BRYAN et al. v. HAMRICK et al.**

**No. 1696.**

Circuit Court of Appeals, Tenth Circuit.
April 4, 1939.

On Rehearing Aug. 14, 1939.

Writ of Certiorari Denied Dec. 4, 1939.

See 60 S.Ct. 262, 84 L.Ed. ——.

LEWIS, Circuit Judge, dissenting.

———◆———

I. J. Underwood and A. F. Moss, both of Tulsa, Okl. (G. C. Spillers, Yancy & Spillers, Underwood, Canterbury, Pinson & Lupardus, and Moss & Young, all of Tulsa, Okl., on the brief), for appellants.

Felix A. Bodovitz and Donald L. Brown, both of Tulsa, Okl., for appellees Lottie and L. D. Hamrick.

Rollin E. Gish, of Tulsa, Okl., for appellee James A. Lull, intervener.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

December 1, 1920, E. S. Horn, John E. Horn and H. O. Bland, of Tulsa, Oklahoma, executed and filed for record with the registrar of deeds of Tulsa County, Oklahoma, an instrument which they denominated "Declaration of Trust of the Imperial Royalties Company". They named themselves as the trustees of said trust and stated that said trustees should hold all of the funds and property called the trust fund then or thereafter paid, transferred or conveyed to them or their successors as trustees in trust for the purposes and with the powers and subject to the limitations thereinafter declared for the benefit of the cestuis que trustent (shareholders). It was stated that neither the trustees nor the cestuis que trustent (shareholders) shall ever be personally liable as partners or otherwise; that it was not a partnership, but that for all debts the trust should be liable as such to the extent of the trust fund only; that in all contracts or instruments

it should be expressly stipulated that the cestuis que trustent (shareholders) shall not be liable; that the trustees should have the power and discretion as if absolute owners to invest the trust fund for the operation of the business of owning, buying, selling and otherwise acquiring oil and gas royalties and leases, both developed and undeveloped, in the United States of America and Old Mexico.

The trust was capitalized in the sum of $1,000,000, divided into 500,000 preferred shares of the par value of $1 each and 500,000 common shares of the par value of $1 each to be fully paid and non-assessable. Three separate tracts of land containing in the aggregate 330 acres, all situate in Oklahoma, were described in which E. S. Horn had acquired as trustee an interest in their oil and gas contents and which should be taken over by the trust on payment of $10,000 out of the trust fund to be raised by selling shares to those who would purchase, and the trustees were authorized to purchase such additional oil royalties as they might deem advisable, using any of the trust funds provided by cestuis que trustent (shareholders) for that purpose, said purchases to be in the names of the trustees, they to hold all properties so acquired subject to the provisions of the declaration for the sole use and benefit of the cestuis que trustent who should be trust beneficiaries only.

The form of the certificates for preferred and common shares was prescribed in the declaration. The price at which they were to be sold was left to the determination of the trustees. The preferred shares however entitled the holders to an annual dividend of 12 per cent out of the net profits of the trust, and the common shares up to 6 per cent annually, and if any surplus of earnings remained after payment of dividends on both classes of shares such surplus might be used at the discretion of the trustees in acquiring additional royalty interests for the trust or disbursed as extra dividends, both classes of shares participating equally. All holders of shares were to be bound by the declaration of trust. The office of the trust was to be maintained at Tulsa, Oklahoma, unless the trustees deemed it advisable to move it elsewhere. The Oklahoma statute (Section 11821, 60 Okl. St.Ann. § 172) provides:

"Such express trusts shall be limited in the duration thereof either to a definite period not to exceed twenty-one (21) years, or to the period of the life or lives of the beneficiary or beneficiaries thereof. The instrument creating the trust shall specify the period of duration thereof within the limitations herein provided."

In the declaration of trust the term of the trust was to be for a period of 20 years and lives in being, but the trustees were given power at their discretion to terminate the trust by dividing the trust fund or the proceeds thereof among the cestuis que trustent. It is conceded this trust will expire on December 1, 1940. In case of decision by the trustees to terminate the trust all property interests owned by the Trust shall be converted into money, and proceeds of sale less actual expenses shall be distributed in accordance with their respective interests to the cestuis que trustent (shareholders). It is declared that, should it seem judicious to the trustees so to do, they at their discretion may convey the trust funds and other assets to trustees of a new trust or to a corporation.

"'The Trustees shall have the power and authority to enlarge the Trust Estate at any time by increasing the number of Beneficial Interests comprising the Trust, and any such increase in the capitalization of the Trust shall be in accordance with the plan of organization and operation as outlined herein for the management and conduct of the Trust Estate. * * *

"The ownership of shares hereunder shall not entitle the shareholder to any title in or to the Trust property, or right to call for a partition, division or accounting of the same.

"This Declaration of Trust may be altered or amended by the Trustees, provided that such alterations or amendments are in conformity to the laws governing Common Law Trusts, and in case of amendment or alteration, a copy thereof shall be filed with the Recorder of Deeds, in the county where this instrument has been filed, and then the same shall be attached to and made a part of this instrument."

The three trustees signed and acknowledged the declaration as a deed would be executed in Oklahoma.

On December 26, 1922, the trustees, E. S. Horn, John E. Horn and H. O. Bland, amended the declaration of trust by increasing its capitalization from $1,000,000 to $2,000,000 to be represented by 1,000,000 preferred shares par value $1 each and 1,000,000 common shares of *no par value*.

On May 12, 1925, the said trustees again amended the declaration of trust by increasing the fund to $6,000,000 to be divided into 3,000,000 preferred shares of the par value of $1 each and 3,000,000 common shares of *no par value.*

December 1, 1930, E. S. Horn, H. O. Bland and John E. Horn again amended the declaration of trust in capitalization, thus:

"This Trust shall be divided into Five Million (5,000,000) Preferred shares of the par value of One Dollar ($1.00) each, Three Hundred Thousand (300,000) Class A Common shares of no par value, all such shares of each class to be issued fully paid and non-assessable.

"Class A Preferred shares represented by certificates outstanding shall be entitled to dividends or distributions at $1.80 per share per annum out of the receipts of the trust before any dividends may be paid on the Common shares of either class; * * * and shall represent and shall in all respects, including all rights to dividends, distributions and payments be equal to and the same as a block of fifteen (15) Preferred shares, except that Class A Preferred shares shall never be entitled to dividends exceeding $1.80 per share per annum (save and except such additional or special and extra dividends as the trustees may declare under the provisions of subdivisions (b) and (c) of paragraph 19 following); and said Class A Preferred shares shall always be entitled to fifteen times the annual dividends paid on Preferred shares, not exceeding, however (except as to the additional, or special and extra dividends aforesaid), One Dollar and Eighty Cents ($1.80) per share per annum.

"Class A Common shares shall represent and shall in all respects, including all rights to dividends, distributions and payments, be equal to, and the same as, a block of fifteen (15) Common shares. * * *

"The Preferred shares and the Class A Preferred shares shall, up to their respective preferences of Twelve Cents (12c) per share and One Dollar and Eighty Cents ($1.80) per share provided therefor, share or pro rate the total of all dividends paid upon all outstanding Preferred shares and Class A Preferred shares in the ratio of fifteen (15) times as much per share on the Class A Preferred shares as is paid per share on the Preferred shares. The Common shares and the Class A Common shares shall, up to their respective divi-

dends of six cents (6c) and ninety cents (90c) per share, respectively, provided for hereinafter under paragraph 19(c), share or prorate the total dividend paid upon all outstanding Common shares and Class A Common shares in the ratio of fifteen (15) times as much per share on the Class A Common shares as is paid per share on the Common shares."

Horn, Bland and Horn, original trustees, resigned, and thereafter in January, 1935, appellants, Bryan, Bostick and Sisk were appointed as their successors by the state district court at Tulsa. On March 2, 1935, the newly appointed trustees amended the declaration of trust, thus:

"This Trust shall be divided into Seven Million (7,000,000) Preferred shares of the par value of $1.00 each, Three Hundred Thousand (300,000) Class A Preferred shares of no par value, Seven Million (7,-000,000) Common shares of no par value, and Three Hundred Thousand (300,000) Class A Common shares of no par value, all such shares of each class to be issued fully paid and non-assessable. * * *

"All Preferred shares and Class A Preferred shares not heretofore issued shall be sold by the Trustees for the benefit of the Trust at such times and for such price, subject to the limitations hereinafter provided, as they shall deem beneficial to the Trust, * * *."

The amendment on the subject of expenses of the trust provided:

"As a part of such necessary expense there shall be paid to the Managing Trustee and each of the Co-Trustees, out of the funds of the trust estate, a reasonable compensation for services rendered to and on behalf of the Trust Estate, the amount thereof to be fixed by the District Court of Tulsa County, Oklahoma."

In the appointment of these trustees Bryan was designated as Managing Trustee and Bostick and Sisk as Co-Trustees. Bryan at the time of his appointment as trustee was receiver of the trust estate appointed as such by said state court in another class suit, and was in possession. The trust was also in litigation in the United States District Court for the Eastern District of Oklahoma in a proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, brought by its shareholders claiming as its creditors to obtain reorganization. Bryan v. Welsh, 10 Cir., 72 F.2d 618; Bryan v. Welch, 10 Cir., 74 F.2d 964.

This suit now under consideration was not instituted until April 14, 1937. It was brought as a class suit on behalf of certificate holders in the trust. The trust is rested on the statute of Oklahoma. See Oklahoma Statutes, 1931, Vol. 2, Article 5, particularly Sections 11820–11823, 60 Okl.St. Ann. §§ 171–174.

The class suit brought in the state court at Tulsa was entitled Alta L. Hamrick et al. v. Imperial Royalties Company et al. Curtis F. Bryan was appointed receiver of all the property of the trust in that suit. That court also appointed the three new trustees in that suit and fixed their compensation as such. It also found that it was necessary to the preservation of the trust estate and the interest of its shareholders that the amended declaration of trust made by the new trustees should be approved, and such an order was entered. Alta L. Hamrick sued as a shareholder in the trust, and other shareholders joined her as plaintiffs or intervenors. The state court found the number of shares of each class that had been issued, their relative rights, and the pro rata as between them in distribution of the corpus of the trust estate. It found:

"That there exists in the capital structure of said trust estate a deficit in excess of $4,000,000.00, and that during the existence of such capital deficit, in any amount, cash disbursements made to shareholders constitute and are distributions of capital; that such distributions of capital should, under the terms of said declaration of trust, amended declarations of trust and amendments thereto, be paid to the holders of each share of $1.00 par Preferred and Common in equal proportions and to the holders of each share of Class A Preferred and Class A Common in equal proportions; that the holder of each share of Class A Preferred or Class A Common should be paid an amount equal to fifteen times that paid the holder of each share of $1.00 par Preferred or Common.

"That the preference as to $1.00 par Preferred and Class A Preferred shares for which provision is made in said declaration of trust, amended declarations of trust and amendments thereto, are and were intended to be effective as to and only as to distributions payable from surplus created by net earnings of the trust estate.

"It is therefore, ordered, adjudged and decreed by this court that the trustees of Imperial Royalties Company be and they are hereby instructed and directed to pay out of the funds of said trust estate to shareholders at such time, or times, as the trustees may in their discretion deem proper and advisable and in the best interests of the trust estate and its shareholders distributions of capital as follows:

"(a) To the holders of each share of $1.00 par Preferred and each share of Common an equal amount;

"(b) To the holders of each share of Class A Preferred and each share of Class A Common an equal amount;

"(c) To the holders of each share of Class A Preferred or Class A Common an amount equal to fifteen times that paid to the holders of each share of $1.00 par Preferred or Common.

"Done in open court this 8th day of November, 1935.

"S. J. Clendinning, Judge."

It also appears in the Alta Hamrick suit that judgment was rendered in the state court against John E. Horn and the estate of E. S. Horn in the sum of $2,611,904.34, but is uncollectible. Circumstantially it seems clear that a great deficiency in assets of the trust came about while the two Horns were in control of the trust fund. In line with the decree of the state court, supra, and as in obedience thereto the new trustees made three separate disbursements to shareholders out of the capital structure of said trust estate in the total amount of $182,824.07. We think that decree should be taken as a direction and command to the trustees to liquidate the trust estate for the benefit of the shareholders, granting them a reasonable time to do so. We see no reason why the trustees should not carry out those directions and report to that court. The value of all said property was appraised by a competent petroleum engineer at $582,-768.

After litigation against the trust subsided the newly appointed trustees became interested in the question as to what should be done with it or the remainder of the fund when the twenty year period of limitation would expire on December 1, 1940. It appears to have been suggested by some of the shareholders that it could be indefinitely continued for twenty or even twenty-one year periods by simply amending the declaration and having the trustees convey all the trust estate to new trustees, but that would be a clear attempt to circumvent the statute. In Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303, 308, the

Supreme Court said: "Trusts in relation to real property, except as authorized by statute, are forbidden. Sections 11803 and 11821, O.S.1931, 60 Okl.St.Ann. §§ 131, 172. Express trusts are authorized (section 11820, O.S.1931, 60 Okl.St.Ann. § 171), but their duration is limited. Section 11821, O.S.1931."

The trustees decided to organize a corporation under the laws of Delaware and deed the trust property to it. They formulated a plan of dividing the shares in the corporation among the certificate holders in the trust on a basis of equality among them as to value, using the appraised value $582,-768 as the total corporate assets, and informed the shareholders fully of the plan. There was no serious contention that the basis for division of corporate shares among the holders of shares in the trust estate was or is not a fair and just one. After the plan was fully formed the trustees by circular letter to the shareholders in the trust informed them of its provisions. It set forth the number of shares in the trust, the number of shares to be provided for in the Delaware corporation, and among other things said:

"There is presented herewith a plan, which has been evolved by the trustees of Imperial Royalties Company, for the purpose of giving effect to the expressed desire of a substantial proportion of the beneficial interest shareholders of the trust estate for the perpetuation of its business beyond the term fixed by the provisions of the declaration of trust, through reorganization in corporate form. Provisions have been embodied therein which will protect the rights of those electing to be paid in cash, their distributive share of the value of the trust assets."

It was testified by Mr. Bryan, trustee, that arrangement had been made in New York to pay any and every shareholder in the trust estate his proportionate share of the appraised value, $582,768, in cash if he should not desire to subscribe for stock in the corporation. The plan provided for its submission to a vote of the shareholders in the trust and that if there should not be 66⅔ per cent of the shares voted in favor of the plan it would not be accepted. The holders of 76.54 per cent of the outstanding shares in the trust estate have signified their approval of the plan, and at the time of trial 56.75 per cent of the holders of those shares had subscribed for stock in the new corporation.

Each of the trustees testified as to the part he took in that capacity in preparing the plan, in procuring the Delaware corporate charter, and in presenting the whole plan to the Securities and Exchange Commission and that he approved the plan of transferring the trust estate to the corporation and believed it best for all beneficiaries. We see nothing in their testimony indicating in the slightest degree anything but an honest effort to faithfully serve all cestuis que trustent.

The court below perpetually enjoined the three trustees that had been appointed by the state court from conveying any of the property to the corporation, from doing anything to terminate the trust. It annulled and declared the plan void and of no effect. It removed the three trustees, Bryan, Bostick and Sisk, and appointed three new trustees and fixed their salaries as such. It ordered Bryan, Bostick and Sisk to pay to the trust fund all moneys of the trust used and expenses incurred in organizing the new corporation in an amount of several thousand dollars and to personally discharge all liabilities in connection therewith and to account to the trust fund therefor, and to turn over and deliver to the new trustees all books, records and funds that belonged to it within ten days.

Reverting to the state court's findings and decree, a court of general jurisdiction, —It held that it was without power to compel shareholders in Imperial Royalties Company to take stock in a corporation in lieu of their shares in the trust estate. It ordered and decreed that the trustees of Imperial Royalties Company pay out the funds of said trust estate to its shareholders and specified the pro rata interest of holders of the four kinds of shares that had been issued by said trustees. That was a liquidation order. In substance the court below granted no other relief to appellees in the instant case who were plaintiffs below, and these plaintiffs-shareholders in the instant case stood in privity to the plaintiffs-shareholders in the Alta Hamrick case in the state court. In fact all shareholders in the trust were bound by the decree of the state court. Many hundred shares were owned by plaintiffs or intervenors there. Harmon et al. v. Auditor et al., 123 Ill. 122, 13 N.E. 161, 5 Am.St.Rep. 502; Dewey v. St. Albans Trust Co., 60 Vt. 1, 12 A. 224, 6 Am.St.Rep. 84; Wil-

loughby et al. v. Chicago Junction Rys. & U. S. Co., 50 N.J.Eq. 656, 25 A. 277; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Johnson Steel Street Rail Co. v. Wharton, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429.

Reversed with directions to vacate the decree and dismiss the bill and interventions.

BRATTON, Circuit Judge, concurs in the result.

PHILLIPS, Circuit Judge (concurring).

The Imperial Royalties Company has 9600 shareholders. Its outstanding shares are as follows:

| | | |
|---|---|---|
| $1.00 Preferred | 5,110,716 | Shares |
| Class A Preferred | 260,000 | " |
| Class A Common | 91,459 | " |
| Common | 1,804,052 | " |

The complainants herein, Lottie Hamrick and L. D. Hamrick, hold 2000 shares of $1.00 Preferred and 7 shares of Class A Preferred. Lull filed an intervening petition herein. He alleged in his petition that he was the owner of common stock in the Imperial Company. There was no proof of the amount of stock owned by him.

The amended declaration of trust of the Imperial Company in part provided:

"28. * * * The trustees may at their discretion terminate the trust hereby created by dividing the trust funds or the proceeds thereof among the cestuis que trustent (shareholders), in case of decision by the trustees to terminate the trust as herein provided, all property interests owned by the trust shall be converted into money as speedily as they deem feasible and the proceeds, less actual expenses * * * shall be distributed, in accordance with their respective interests and proportions to all of the shareholders."

"29. Should it seem judicious to the Trustees so to do, they may at their discretion convey the Trust fund and other assets to Trustees of a New Trust or to a corporation, * * *. In such event the new Trustees should conveyance be made to Trustees, shall succeed to all the powers of the Trustee of this Trust * * *."[1]

The end of the trust period was approaching and it was necessary for the trustees to make disposition of the trust assets. They were empowered to adopt one of three methods, namely, (1) to terminate the trust and divide the trust property or the proceeds thereof among the shareholders in proportion to their respective interests; (2) to convey the trust fund and other assets to the trustees of a new trust as trustee;[2] or (3) to convey the trust fund and other assets to a corporation. Method 1 provides for complete liquidation. Methods 2 and 3, which are alternatives to 1, do not provide for liquidation in the strict sense, but rather for distribution of shares in the new trust or the corporation.

The decision of the trial court was in part predicated on Greer Investment Co. v. Booth, 10 Cir., 62 F.2d 321, 322. The provision of the trust agreement in that case in part read as follows:

"* * * in case of a decision by the trustees to terminate the trust as herein provided, all property interests owned by the trust shall be converted into money and the proceeds of the sale, less actual expenses, if any incurred by said conversion of trust properties into cash shall be distributed, in accordance with their respective interests, to the shareholders—provided, however, that should it seem judicious to the trustees so to do, they may at their discretion, convey the trust fund and other assets to trustees of a new trust or to

---

[1] The original declaration of trust provided:

"* * * the Trustees may at their discretion terminate the Trust hereby created by dividing the Trust Funds or the proceeds thereof among the cestuis que trustent (shareholders), * * *. And in case of decision by the Trustees to terminate the Trust as herein provided, all property interests owned by the trust shall be converted into money and the proceeds of sale, less actual expenses, if any, incurred by said conversion of the Trust properties into cash, shall be distributed, in accordance to their respective interests, to the cestuis que trustent (shareholders) * * *.

"Should it seem judicious to the Trustees so to do, they may at their discretion convey the Trust Fund and other assets to the Trustees of a new trust or to a corporation, * * *. In such event the new Trustees, should conveyance be made to Trustees, shall succeed to all the powers conveyed by this Trust, if any exist. * * *"

[2] It may be doubted that this could be done without violating the Oklahoma statute limiting the duration of a trust.

a corporation, * * *. In such event the new trustees, should conveyance be made to trustees, or to the corporation, should conveyance be made to a corporation, shall succeed to all the powers conveyed by this trust."

It will be observed that it provided, should conveyance be made to trustees, they should succeed to all the powers conveyed by the original trust, and should conveyance be made to a corporation, it should succeed to all the powers conveyed by the original trust. In other words, the trust agreement there contemplated a conveyance to a corporation as trustee and not an outright transfer of the legal and equitable title to the corporation. In the instant case, the trust agreement provides that if the conveyance is made to new trustees, they shall succeed to all the powers of the trustees under the original trust. It makes no such provision in the event of a conveyance to a corporation, and thereby clearly implies, I think, that a conveyance to a corporation is to be an absolute transfer of the legal and equitable title. Because of this material difference between the trust agreement in the instant case and the trust agreement involved in the Greer case, it is my view that the Greer case has no applicability here.

The trustees, defendants herein, made three distributions to Imperial shareholders of approximately $60,000 each on the basis of distribution judicially determined by the state court.[3] The trustees advised the shareholders that as soon as certain proceedings were terminated, definite action would be taken by the trustees to provide for a reorganization of the Imperial Company into a corporate organization provided such was the desire of a majority of the shareholders.

The trustees employed one Alexander B. Morris, a petroleum engineer, to make an appraisal of all the properties of the Imperial Company. His qualifications and ability were admitted by counsel for the complainants. The appraisal was made as of December 1, 1936. It embraced two valuations, one a liquidating value of $582,768, and one a present worth value of $1,007,000. Morris testified that the liquidating value was what the property would bring on a cash sale, and that the present worth value was the net amount that could be realized from the properties if they were

all "kept together and efficiently managed through to exhaustion."

Bryan was an experienced oil man. He testified that he checked the accuracy of Morris's appraisal and was of the opinion that it was accurate and fair. After the appraisal, the trustees employed legal counsel and devised a plan of reorganization. The plan contemplated the organization of the Toklan Royalty Corporation, and the transfer to it of all the assets of the Imperial Company except a few intangible assets of doubtful value. It gave the shareholders the option

"(a) To retain his or her ratable interest in the form of shares of the Series A stock of Toklan Royalty Corporation, the present worth or 'going concern' value of which is stated to be $1.24 per share;

"(b) To receive, instead, cash equal to a ratable proportion of the assets to be transferred, equivalent to 71.73c for each share of Toklan Royalty Corporation stock to which each is entitled to subscribe."

A printed prospectus which described the plan in detail and set out the details of appraisal, giving both the liquidating value and the present worth value, was furnished to each of the shareholders.

It is true that the district court of Tulsa County, Oklahoma, in the matter of Alta L. Hamrick et al. v. Imperial Royalties Company et al., No. 56,614, adjudged that the court had no power on the application of a minority group of the shareholders in the Imperial Company to order a reorganization of the trust and a transfer of its assets to a corporation or to compel the shareholders to take stock in such corporation in lieu of their shares in the trust. The question here presented is whether the trustees may, in the exercise of the discretion vested in them, transfer the trust property to a corporation giving to the Imperial Company shareholders the option to take shares in the corporation in proportion to their respective interests or to take their proportionate share of the fair liquidation value of the assets in cash. It seems to me that such disposition and distribution is clearly within the powers vested in the trustees by the original and amended declaration of trust.

Furthermore, the plan has been expressly approved by 76.54 per cent of the shareholders of the Imperial Company.

---

[3] See decree of state court of November 8, 1935, set out in opinion of Judge LEWIS.

They have expressed a desire that the assets of the trust, consisting largely of oil and gas royalties, be transferred to a corporation, to be held and managed by it until the oil and gas in the properties in which the royalty interests are held have been fully produced, in order that the full value of the royalty interests may be realized, rather than that the assets be sacrificed through a forced liquidation.

I do not regard the state court order of November 8th as a final order of liquidation. It was entered on a petition of the trustees for a construction of the trust and a determination of the relative rights to cash distributions of the holders of each class of shares. It fixed those relative rights and authorized distribution of capital assets on that basis, from time to time as the trustees in their discretion should deem proper. It gave no direction for the disposition of the assets of the trust and, in my opinion, left the trustees free to follow any one of the methods provided in the declaration of trust.

For these additional reasons, I concur in the direction that the decree be vacated and that the complaint and interventions be dismissed.

## On Rehearing.

PHILLIPS, Circuit Judge.

The appellees filed a petition for rehearing and we granted oral argument thereon.

Judge Lewis adheres to the views expressed in his former opinion. This opinion expresses the views of Judge Bratton and the writer.

■ At the oral argument, counsel for appellees advanced two principal propositions: *First,* that the plan is unfair in that the provisions for distribution of the assets of the trust and stock in the Toklan Royalty Corporation are not in accord with the provisions of the trust agreement and discriminate in favor of the holders of common shares in the trust to the detriment of

holders of preferred shares in the trust. We are convinced that it is impossible to determine from this record the relative rights of the several classes of owners of beneficial certificates in the trust to participation in the distribution of the capital assets of the trust or the stock of the Toklan Royalty Corporation other than from the decree of the district court of Tulsa County, Oklahoma, entered in the case of Alta L. Hamrick et al. v. Imperial Royalties Corporation et al., No. 56614, on November 8, 1935. In their petition below appellees did not challenge the validity of that decree. But they undertake to do so here on jurisdictional grounds. Alta L. Hamrick brought cause No. 56614 as a class suit. The present trustees were appointed by the court in that suit. The decree of November 8th is not set forth in full in this record. The undisputed proof is that it was entered on petition of the trustees for an order construing certain terms of the trust and directing the trustees with reference thereto, and after notice given.[1] It was entered by a state court of general jurisdiction.[2] The attack here is collateral. It will be presumed that the court had jurisdiction both of the subject-matter and the parties and that all facts necessary to give the court jurisdiction to render the particular decree were duly found, the contrary not affirmatively appearing.[3] It follows that the challenge to the decree here is not well taken.

■ The plan provides for the distribution to each holder of beneficial certificates in the trust, his share of the liquidating value of the assets of the trust or stock in the Toklan Royalty Corporation at his election, in accordance with the relative rights of the several classes of holders of beneficial certificates in the trust, as adjudged by the decree of November 8th. The challenge to the fairness of the plan is not well grounded.

■ *Second,* counsel for the appellees challenge the power of the trustees to con-

---

[1] The only evidence as to the notice was that of one of the trustees who testified without giving particulars that notice was given. His evidence with respect to notice was not controverted.

[2] Oklahoma Constitution, Art. 7, § 10, Okl.St.Ann.O.S.1931, § 13562.

[3] Harvey v. Tyler, 2 Wall. 328, 341, 342, 17 L.Ed. 871; Galpin v. Page, 18 Wall. 350, 365, 366, 21 L.Ed. 959; Hatten v. Hudspeth, 10 Cir., 99 F.2d 501, 502; Cohen v. Portland Lodge, No. 142,

B. P. O. E., C.C.Or., 144 F. 266, 268; Fishel v. Kite, 69 App.D.C. 360, 101 F.2d 685, 687, 688; Petroleum Auditors Ass'n v. Landis, 182 Okl. 297, 77 P.2d 730, 731, 732; Yahola Oil Co. v. Causey, 181 Okl. 129, 72 P.2d 817, 819; Myers v. Carr, 173 Okl. 335, 47 P.2d 156, 160; Fletcher v. Superior Court, 79 Cal.App. 468, 250 P. 195, 197; Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S.W.2d 803, 811, 812.

vey the assets of the trust to the Toklan Royalty Corporation because the powers and objects of that corporation are broader than the objects of the trust and the power of the trustees thereunder. Counsel for the appellees admitted at the oral argument that the trustees had power to convey the assets of the trust to the corporation under method three provided for in Section 29 of the amended declaration of trust.[4] They assert, however, that the powers and objects of the corporation should be substantially the same as the objects of the trust and the powers of the trustees thereunder. With this we agree. The amended certificate of incorporation of the Toklan Royalty Corporation authorizes it to engage generally in oil and gas prospecting, producing, refining, processing, and distributing. The amended declaration of trust authorized the trustees to use and invest the trust fund "for the operation of the business of owning, buying, selling, and otherwise acquiring or disposing of oil and gas royalties, and of oil and gas royalty acreage, developed and undeveloped, and including casinghead gas and gasoline rights and royalties in the United States of America and in the Republic of Mexico." Thus, it will be seen that the powers of the corporation are much broader than the objects of the trust.

We are of the opinion that the plan would be free from objection and the proposed transfer to the corporation valid, if the third paragraph of the articles of incorporation of the Toklan Royalty Corporation were amended to read substantially as follows:

"The nature and business of the corporation and the objects and purposes proposed to be transacted, promoted, and carried on by it are the business of buying or otherwise acquiring, owning, holding, and selling or otherwise disposing of oil and gas royalties, oil and gas royalty acreage, developed and undeveloped, and casinghead gas and gasoline rights and royalties in the United States of America and Republic of Mexico, with all powers necessary or incident thereto, including the following, to-wit:

"(a) To hold, purchase, or otherwise acquire, and to lease, exchange, convey, mortgage, or otherwise dispose of oil and gas royalties, oil and gas royalty acreage, developed and undeveloped, and casinghead gas and gasoline rights and royalties.

"(b) To enter into, make, and perform contracts of every sort and description to effectuate the objects of the corporation.

"(c) To issue shares of its capital stock as authorized for cash, property, either real, personal, or mixed, leases, or for any combination of the foregoing.

"(d) To conduct its business in all or any of its branches in the state of Delaware and in any and all other states and territories of the United States and in the Republic of Mexico.

"(e) To perform any other acts and do all things that may be necessary or convenient to the attainment of the purposes of this corporation to the same extent as natural persons lawfully might or could do in so far as such acts or things are permitted to be done by corporations organized under the general laws of Delaware.

"The particular specifications of objects, powers, and purposes herein shall not be in limitation but rather in furtherance of the powers granted the corporation under the laws of the state of Delaware."

If the appellants shall so amend the articles of incorporation of the Toklan Royalty Corporation within 60 days from the date of the filing of this opinion and furnish satisfactory evidence thereof to this court, then the decree will be reversed and the cause remanded with instructions to dismiss the bill of complaint with prejudice. If appellants fail so to amend the articles of incorporation and furnish such evidence to this court within the time fixed, then the decree below will be affirmed.

---

[4] See concurring opinion of PHILLIPS, Circuit Judge, herein.